## FIRST NAT. BANK OF ANADARKO et al. v. DUTCHER et al.

No. 21407. Opinion Filed Oct. 11, 1932.

Morris & Wilhite, for plaintiffs in error.

Wm. McFadyen, for defendants in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Caddo county in refusing to require the sheriff to amend his return of the sale of some mortgaged lots and confirming their sale. There was a first mortgage upon the lots, and the foreclosure in this case was a second mortgage. The order of sale in the commanding part is as follows:

"You are, therefore, hereby commanded forthwith to advertise and sell without appraisement as in case of sales of real estate taken on execution, the following described real estate, to wit:

"Lots twenty-six (26), twenty-seven (27), twenty-eight (28) and twenty-nine (29) of block thirty-nine (39) in the city of Anadarko, Caddo county, Okla., according to the original recorded plat thereof, or so much thereof as may be necessary to satisfy said judgment and interest, attorneys' fees and costs and costs of sale and all the right, title, interest, and equity of redemption of said defendant in and to said premises, subject to confirmation by said court, and to bring the proceeds of such sale into court to abide the further order of the court.

"And you are further commanded to return this writ into this court within 60 days from the date hereof and show by your return indorsed hereon what you have done under it. Hereof fail not at your peril."

The judgment on which the order of sale

. was based does not mention the first mortgage that existed on the property, though the petition in the case, on which the judgment was based, states:

"Plaintiff further states that its said mortgage was taken subject to a mortgage in favor of A. H. Miller in the sum of $2,600, and this foreclosure proceeding is being brought and will be prosecuted subject to the rights of said first mortgagee under his said mortgage."

The prayer of the petition was:

"* * * That the plaintiff's mortgage be foreclosed and said real estate be sold subject to the said first mortgage of A. H. Miller; and that said property be sold upon appraisement and the proceeds thereof be applied as provided by law."

The clause in the mortgage was:

"* * * and the appraisement of said premises is hereby expressly waived, or not, at the option of the said mortgagee, its heirs, administrators or assigns."

In the body of the mortgage there is a covenant of warranty that the property was clear of any incumbrances, except $2,600 to A. H. Miller. The date of the judgment of condemnation is the 18th of October, 1927. The journal entry recites that the appraisement is waived in the mortgage, and the order is to sell without appraisement and that no order shall issue for six months from that date. The return of the order of sale is dated the 10th of October, 1929, and recites a receiving of the writ on the 24th of August, 1929, and a publication of sale notice in the Anadarko paper, and sale on the 5th of October, 1929. The portion about offering the lots singly in the printed return appears to have been marked out, followed by the following return:

"I then offered all of said real estate for sale together and sold the same to A. J. Stevens subject to a first loan of $2,600 for the sum of thirty-eight hundred dollars ($3,800) and received a check for $1.200 cash, subject to confirmation by said court * * * he * * * being the highest and best bidder therefor, and such sale being · for more than two-thirds the appraised value therefor as returned in the inquest of said three householders.

"Said money in my hands subject to the order of the court."

There appears in the record a motion by the plaintiff to confirm the sale, signed by the attorneys for the plaintiff, and filed on the 10th of October, 1929. There is a motion to confirm the sale, signed by the attorney for defendant Anna A. Dutcher, filed November 14, 1929, affirming that the purchaser bid $3,800, and demanding that the claim of the plaintiff be satisfied out of this $3,800, and that the court make an order requiring the sheriff to pay the residue to her.

On the 14th of November, 1929, there was a motion made by the purchaser for an order authorizing the sheriff to amend his return, and averring that the purchase price of $3,800 represented the $1,200 and the $2,600 incumbrances, and that the return of $3,800 cash being bid was an error. On the 3rd of February, 1930, the purchaser filed a motion in opposition to the confirmation of the sale, based on the proposition that his bid was $1,200, subject to the mortgage, and raising some objections to the return not showing the proper publication of notices.

Proof was taken upon the issues thus raised, and the testimony of Sam L. Wilhite, one of the attorneys in the case, and A. J. Stevens, the purchaser, and Grover C. Wamsley, was taken on behalf of the parties objecting to the confirmation. The deputy sheriff testified on behalf of the party desiring the confirmation. The officer's testimony was as follows:

"A. The question came up I hadn't stated the case or figured the interest or anything else. They figured some and I figured some. I don't remember saying anything that would confuse a bid on the place. I sold this land and began to make my return. All I lacked was having the money. I made the return down that far. Mr. Stevens brought up a check for $1,200. I would not receive it, and he said that was the bid. I just wondered if I had been crazy or if he was. I came up, back to the county attorney—Barry, assistant county attorney—and he rather thought that was the amount, and Mr. Stevens left his check of $1,200. I told him I would hold it; that if that was right, I was wrong. So I went down and talked to Mr. Wilhite—I didn't know at the time he was the attorney—in fact, I didn't know he was bidding this in for the bank. I knew Mr. Wilhite was attorney for the bank, but didn't know Stevens was bidding for the bank. I asked him what his understanding of the bid was. He said his understanding was, this was to be paid out of this $3,800. So I went ahead and fixed my return up that way. It seemed like they were all against me in it. It wasn't my understanding of the sale."

On cross-examination he speaks as follows:

"Q. You then understood that Stevens—you understood he was only bidding $1,200 and assuming the other mortgage? A. Yes,

sir. Q. You then went and consulted the county attorney about it? A. Yes. sir. He thought that was all right, the $1,200 over and above the mortgage—Mr. Stevens left and I explained it to him, how it was; then he said he believed it was all right. So Mr. Wilhite about that time advised me right—I didn't know the bank was buying this in; he said he understood the first mortgage was to come out of this $3,800. Q. So you accepted $1,200 and made your return into court? A. Yes, sir. I think I stated on that, that it was the amount over the first mortgage. Q. Mr. Barry, the assistant county attorney, he told you, after you told him the bank had purchased it, he told you he thought it would be all right for $1,200? A. Yes, sir."

The notices were introduced in evidence, and also there were affidavits attached to one of the motions that appear not to have been contradicted, notice of their being used in evidence having been given to the defendant Anna A. Dutcher, accepted by her attorney. The four affiants were engaged in the real estate business in Anadarko, and cognizant of the values of the property, and their estimate of the outside value of the property was $4,000.

From this evidence, it is clear that the parties making the $3,800 bid, as well as the sheriff himself, considered it as a $1,200 bid for the equity. It would have been strange indeed for any sensible person to have bid $3,800 for the equity, when the entire property was not worth over $4,000, and the first mortgage, taxes and interest amounted to over $3,000. Most clearly, all parties understood, when the $1,200 was accepted by the sheriff, that the bidder was not expecting to pay more.

It is true, the way the notices read, that there might be some question, if we did not know the surroundings, as to what was meant by the parties in submitting their bid, but we are not at liberty to look at the matter from only one aspect of the case. The recognized rule is that a sound discretion should be exercised with reference to the confirmation of sales made in mortgage foreclosures. That rule seems to be recognized, both by the federal courts and this court, and is set forth in the works on the subject of judicial sales. Among others to which reference can be had is 16 R. C. L. 89, sec. 65, under the head of "Fraud, Misrepresentation, Surprise and Mistake," in the latter part of which the author says:

"Mistake, surprise or misapprehension. not attributable to the fault or negligence of the party complaining, but created by the conduct of the purchaser, of some person interested in the sale or of the officer who conducts the sale, may also be ground for refusing confirmation, the power to correct mistakes and to avoid any transaction made under the influence of mistake being one of the most ancient heads of equity jurisprudence."

Under the conditions here existing, it was the court's duty below to have ordered a resale, instead of confirming the sale, as the parties who were interested in the sale appear to have been laboring under misapprehension originally as to the amount of the bid, the bidder thinking one thing, the sheriff another, the sheriff, however, accepting the $1,200 as the purchase price of the equity and making return to that effect, while the defendant contended for $3,800 in her motion, which was not discovered until the defendant in the case made application to distribute to her the residue after paying off the plaintiff's claim.

The order refusing the correction and confirming sale is vacated, and the lower court is ordered to grant a new order of sale on the demand of the plaintiff, to collect the balance that may be due it on its judgment in foreclosure.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY, J., absent.